PHILETUS W. GATES

v.

DAVID R. FRASER ET AL.

1. PATENTS—JOINT OWNER.—In the case of a joint ownership of a patent right, there is no legal liability on the part of one joint owner to account to his co-owner in respect of a *use* of the patent right.

2. RIGHT OF JOINT OWNER TO CONTRIBUTION.—Whether one joint owner of a patent right can compel his co-owner to account for profits received for license fees, and for a contribution, independent of an express agreement to divide, is not decided.

3. AGREEMENT TO DIVIDE PROFITS.—In this case there was an agrec-

ment between the owners to divide equally all moneys received by either for
license fees, and under such agreement a proceeding for an accounting and
to compel contribution, can be maintained.

4. AGREEMENT NOT EXTINGUISHED BY BANKRUPTCY.—The fact that
one of the parties to such an agreement became bankrpt, does not extin-
guish the agreement. Bankruptcy of one joint owner only extinguished his
right to enforce the agreement, and vested the same in his assignee; it did
not affect the liability of the other joint owner to account.

5. SALE OF BANKRUPT'S ESTATE.—It is immaterial who may be the pur-
chaser of a bankrupt's effects when properly offered and sold by the assignee;
the bankrupt may himself become the purchaser, and he will take by such
purchase all the interest which the assignee had to convey.

APPEAL from the Circuit Court of Cook county; the Hon
M. F. TULEY, Judge, presiding. Opinion filed January 26,
1882.

This was a bill in equity brought by appellant, to compel an
accounting for license fees alleged to have been received by
appellee Fraser, or to be due from Fraser & Chalmers as
licensees of Fraser of a patent owned jointly by Gates &
Frazer. A demurrer to the bill was sustained by the court
below, and the bill was dismissed. This court reversed that
decree, and remanded the cause for further proceedings. 6
Bradwell, 229.

Upon a second hearing of the case on bill, answer, replica-
tion, and an agreed statement of facts, the bill was again dis-
missed by the court below for want of equity. From this de-
cree complainant prosecutes the present appeal.

Mr. GEO. SCOVILLE and Mr. JOHN W. ELA, for appellant;
that appellee Fraser is bound to account for moneys received
for licenses, cited Pitts v. Hall, 3 Blatch. 201; Herring v. Gas
Consumers' Association, 12 Official Gazette, 637; Parkhurst v.
Kinsman, 6 N. J. Eq. 608; Dunham v. R. R. Co. 7 Biss. 223;
1 Story's Eq. Jur. § 466; 2 Kent's Com. 350; Benedict v.
Howard, 31 Barb. 569.

The agreement to divide the fees si not within the Statute
of Frauds: 2 Kent's Com. 510; 2 Story on Contracts, § 1,015;
Fenton v. Emblers, 3 Burr. 1,278; Moore v. Fox, 10 Johns.

243; Lockwood v. Barnes, 3 Hill, 128; McLees v. Hale, 10 Wend. 426; Blake v. Cole, 22 Pick. 97; Kent v. Kent, 18 Pick. 569.

Bankruptcy of appellant does not affect his right to an accounting: Bump's Bank'y, 693.

Messrs. ISHAM, LINCOLN, BURRY & RYERSON, for appellees; that the bankruptcy of one partner dissolves the partnership relation, cited Parsons on Partnership, 486; Story on Partnership, 494; Fox v. Hamburg, Cowp. 445; Marquan v. Mfg. Co. 17 Johns, 525. *Ex parte* Smith, 5 Ves. 295; Williamson v. Wilson, 1 Bland, 418; Gowan v. Jeffries, 2 Ashm. 296.

, Joint owners of letters patent are under no liability to account to one another for profits, in the absence of a special agreement so to do: Voce v. Singer, 86 Mass. 226; De Witt v. Elmira Mfg. Co. 12 N. Y. Sup. Ct. 302; Clum v. Brewer, 2 Curtis, 506; Bump's Law of Patents, 141; Curtis' Law of Patents, 186.

WILSON, P. J.   From the pleadings and agreed facts, it appears substantially that letters patent were issued July 10, 1866, to Gates and Fraser, as assignees of Gates, for an improved shoe for ore stamping machinery, whereby they became equal owners of the patent.   Gates was the inventor, and gave to Fraser a one-half interest, with the agreement made between them, at or about the time of the issuing of the letters patent, that they should divide equally between themselves all moneys received by each from license fees or royalties, or from any other source accruing from the patent.   Pursuant to that agreement, they divided the moneys for a period of about twelve years, and down to January 1, 1878.   Gates became a bankrupt in May, 1878, when his interest in the patent, together with his other assets, passed to his assignee in bankruptcy.

On the 14th day of May, 1879, Gates re-purchased his half interest at the assignee's sale, notified Fraser of the same, and requested him to account for and pay over to Gates one-half of all moneys received or to be received by Fraser for license

Gates v. Fraser.

fees from and after that date, Gates at the same time offering to account for moneys received in like manner by him.

When this case was before us at the former term, we held, that under the allegations of the bill, confessed by the demurrer, appellant and Fraser occupied the relation of partners in respect to the ownership of the patent, and that, as such, Fraser was liable to account to his co-partner for moneys received by him for license fees. On the subsequent hearing in the court below, Fraser set up in his answer the bankruptcy of Gates, and the consequent dissolution of the partnership, if any ever existed, and insisted that as part owner of the patent he is not liable to account to his co-owner, either for the use of the same or for moneys received by him or claimed to be due from Fraser & Chalmers for license fees. We are thus brought to a consideration of the case wholly divested of any question arising out of partnership relations.

What, then, are the rights and liabilities of mere joint owners of a patented invention in respect to contribution? Can one of two or more joint owners be required, in the absence of any agreement, to account to his co-owners for the use by him of the patent, or for moneys received by him for royalties or license fees, where he has granted to a third person the right to manufacture and vend the patented article?

When we look into the books for light on these questions, it must be confessed the search is not very helpful, especially so far as concerns the liability to account for license fees. One is a little surprised at the dirth of adjudications upon a subject which it would naturally be supposed must have come frequently before the courts of determination. Alluding to this subject, Mr. Justice Chapman, in delivering the opinion of the Supreme Court of Massachusetts, in Vose v. Singer, decided in 1862 (4 Allen, 229) said: "Many proprietors of patents have availed themselves of the right to make assignments and grant licenses to a great extent, and there have been for many years a great number of persons interested, as part owners or licensees, in the question whether independently of covenants or agreements, a right of contribution in any form exists between such parties, or any of them. The question has arisen

and been propounded to counsel in many instances; but after having made extensive inquiries, we cannot learn that it has ever before been presented to a judicial tribunal in any form."

Since that time the subject has been discussed, directly or incidentally, in several cases, but in every instance, so far as we have examined, they were cases of a *use* of the invention by one part owner or his assignee, and not the case of moneys received for a license given by him to a third party. We find such expressions as: "Each party is at liberty to use his moiety as he may see fit;" "They cannot, for any legal use of them, incur any obligation to each other," Vose v. Singer, *supra;* "Each, as an incident of his ownership, has the right of use of the patent, or to manufacture under it;" "The nature of the property is such that either owner may use it, and neither can exclude the other from the use;" "Each owner can, at the same time, have, use and enjoy the thing patented," De Witte v. Elmira M'f'g Co. 12 N. Y. Sup. Ct. R. (5 Hun.) 302. And in Curtis' Law of Patents, §§ 186–191: "In respect to the use of the exclusive privileges granted by the patent, each tenant in common holds an equal right with the others to exercise those privileges. If A, by exercising those privileges, gains more than B, or if B chooses to remain inactive, and not to exercise his rights under the patent, how can A be made accountable to B in respect to the gains which have resulted from the exercise of a right which is vested in him as much as it is in B?"

We shall not undertake to collate the authorities bearing on this branch of the subject, but we think it may be considered as settled that for the *use* of a patent right by one part owner or his assignee, there is no legal liability to account to his co-owner. This exemption from liability arises out of the peculiar nature of the property. It is said that while a patent right is a chattel interest, and part ownership in it, is in many respects like part ownership of other personal property, yet the use of a patent right is different from the use of any other property; and that therefore it is not safe to follow the rules adopted in regard to the mutual liabilities of part owners of ships, horses, grain, etc. Vose v. Singer, *supra.*

Gates v. Fraser.

Assuming the right of *user* without liability to account to be settled, it is when we advance a step further, and inquire as to the right of contribution in respect to moneys received by a part owner of a patent for a license given by him to a third party, that the subject is involved in obscurity and some doubt.

If, as was assumed by the New York Court of Appeals in De Witte v. Elmira M'f'g Co. 66 N. Y. 459, the license of one of several owners in common of letters patent confers the right of all, it would seem clear that there should be contribution, for in such case the other owners are excluded from the territory covered by such license, and as that might be co-extensive with the entire territory covered by the patent, such a license would operate as a conversion of their entire interest in the patent. But we find no other case which supports such an assumption; nor are we able to see upon what principle it can be held that the license of one part owner confers the right of all. One partner may convey the entire interest in partnership property, but a mere joint owner of property can convey only his individual interest. Joint ownership of a patent does not create a partnership; and as a sale and assignment by one joint owner of a patent of his interest could not affect the interest of his co-owner, *a fortiori* his license could not.

It was ruled by Hall, J., in Pitts v. Hall, 3 Blatch. 201, that a part owner of a patent can maintain an action for an infringement by his co-owner, and recover as his damages a proportionate share of the value of the property appropriated. Mr. Curtis criticises this opinion as being opposed to the right of user without liability to account, which each tenant in common may equally exercise in respect to the subject-matter of the patent.

In Dunham v. Indianopolis and St. Louis R. R. Co. 7 Bissell, 223, there is a remark of Judge Drummond to the effect that, " perhaps under certain circumstances, if one of the patentees has received more than his share of the profits arising from the thing patented, either in the use or sale of it, or from licenses, he might be held accountable to the other joint patentees." But this remark of the learned judge is little

more than a query, and not the expression of an opinion one way or the other.

In numerous other cases which we have examined the question as to the right of contribution for license fees is left untouched, except in so far as licensing may or may not be considered one of the ways in which a part owner may use his interest in the patent. Suffice it to say we have found no case in which the right of contribution, under the circumstances of the present case, has been expressly affirmed, nor, on the other hand, in which it has been expressly denied; and we shall therefore leave it, as we think the authorities have left it, as a question not yet definitely settled.

But there is one aspect of this case in view of which we think appellant was entitled to have an accounting. Gates was the inventor of the patent and gave Fraser a half interest which the latter accepted under an agreement made between them, that they would divide equally between themselves all moneys received by either for license fees or from any other source accruing from the patent. Fraser paid no other consideration for his interest. This agreement was acted upon by the parties for many years. Fraser admits in his answer that they continued to account with each other down to January, 1878, after which he refused to divide, being advised that he was under no obligation to do so. It is alleged in the bill, and not denied in the answer, that neither Gates nor Fraser individually made, used or sold to others to be used, the patented article, but that their entire business as patentees consisted in licensing to others to make and vend the same, and that they mutually agreed upon a tariff of license fees.

The agreement to divide was one which it was competent for the parties to enter into, and was upon a good and sufficient consideration. It created a valid obligation on the part of Fraser in favor of his co-owner, to divide so long as he retains his interest in the patent and continues to receive royalties on licenses issued by him. It is fairly presumable, under the circumstances, that the agreement to divide was the moving consideration which induced Gates to convey to Fraser his moiety of the patent, and it would be most inequitable and un-

Gates v. Fraser.

just that after thus obtaining his title, he should refuse to perform the agreement which formed the consideration of the grant. But whatever may have been the inducement which prompted the grant, Fraser took his interest under an agreement to divide, and he can only hold it *cum onere*. It is a familiar principle, that a party cannot affirm his contract in part, and avoid it as to the residue. Nor can he rescind his contract without returning whatever he has received under it. He must put the other party in the same position he occupied at the time the contract was entered into. Hunt v. Silk, 5 East, 249; Besley v. Dumas, 6 Bradwell 291.

But it is insisted that by Gates' bankruptcy the agreement to divide was extinguished. We think otherwise. The agreement was a continuing contract, and was, as we have seen, an incident attaching to the ownership of both Gates and Fraser, binding alike upon the respective moieties of each, so long as they retained them. As such, we think it was assignable in equity.

By his assignment in bankruptcy, Gates' interest in the patent became vested in his assignee. The assignee took it, charged with the same incidents and clothed with the same rights as appertained to it while in the hands of Gates. Whatever rights or remedies Gates had, the assignee succeeded to, and could enforce. Bump's Bankruptcy (10 Ed.), 493; Foster v. Hackley, 2 B. R. 407. The bankruptcy of Gates did not extinguish the agreement to divide, nor affect the condition on which Fraser held his title to the patent. It only extinguished Gates' right to enforce the agreement when he was no longer the owner of an interest in the patent. Fraser's rights and liabilities in respect to the property remained the same after as before the bankruptcy, at least as to the assignee or a purchaser at the assignee's sale.

The assignee sold Gates' interest in the property at assignee's sale, and Gates was the purchaser. It was immaterial who might be the purchaser, whether a stranger or Gates; he would take just the interest which the assignee had, neither more nor less, and that was Gates' former interest.

The purchaser happened to be Gates, and he thus became rehabilitated with the same rights as co-owner with Fraser, which he had prior to filing his petition in bankruptcy.

Our conclusion is, first, that so long as Fraser continues to exercise the rights of a joint owner of the patent, by granting licenses and receiving license fees therefor, he is liable to account; and secondly, that in such case the Statute of Frauds can have no application.

The judgment of the court below is reversed, and the cause is remanded, with directions that it be referred to a master, to take an account, according to the prayer of the bill.

Reversed and remanded.